KYLE SCHUMACHER (BAR #121887)
kyle@schumacherlane.com
**SCHUMACHER LANE PLLC**
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax

Attorneys for Plaintiff
Melinda Michelle Douglas

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| Melinda Michelle Douglas**,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TD Bank USA, National Association; Target Enterprise, Inc.; Nordstrom, Inc.; and DOES 1 through 100 inclusive**,**<br><br>　　　　　Defendants. | CASE NO.  3:20-cv-00395-JR<br><br>PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES:<br><br>1. Violation of the Telephone Consumer Protection Act<br>2. Violation of the Oregon Unlawful Debt Collection Practices Act |

　　　　COMES NOW Plaintiff Melinda Michelle Douglas ("Plaintiff" or "Douglas"), an individual, based on information and belief, to allege as follows:

### INTRODUCTION

　　　　1.　　This is an action for damages brought by an individual consumer for Defendants' violation of the Telephone Consumer Protection Act 47 U.S.C. §227, *et seq.* (hereinafter "TCPA"), which prohibits the use of automated dialing equipment when making calls to consumers, and the Oregon Unlawful Debt Collection Practices Act Or. Rev. Stat. §646.639 (hereinafter "UDCPA"), which prohibits harassing or annoying calls to consumers.

　　　　2.　　Plaintiff brings this action against Defendants TD Bank USA, National Association (hereinafter "TD Bank"), Target Enterprise, Inc. (hereinafter "Target"), and Nordstrom, Inc. (hereinafter "Nordstrom") (collectively, "Defendants") for their abusive and outrageous conduct in connection with debt collection activity.

　　　　3.　　While many violations are described below with specificity, this Complaint

alleges violations of the statutes cited in their entirety.

4. The TCPA was designed to prevent calls like the ones described herein, and to protect the privacy of citizens like Plaintiff, and by enacting the TCPA, Congress intended to give consumers a choice as to how corporate entities may contact them and to prevent the nuisance associated with automated or prerecorded calls.

5. The UDCPA is Oregon states version of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA) and aims to protect consumers against unfair and harassing collection practices like the ones described herein. Unlike the FDCPA, the UDCPA applies to a creditor attempting to collect on its own debts.

## JURISDICTION & VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 47 U.S.C. § 227.

7. This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

8. Plaintiff Melinda Michelle Douglas is an individual residing in the state of Oregon.

9. Plaintiff had taken out her first unsecured loan with TD Bank and Target in approximately 2015 (the "Target Account"), a subsequent unsecured loan with TD Bank and Nordstrom in approximately 2017 (the "Nordstrom Account").

10. Plaintiff is informed and believes that Target services and collects on the Target Account on behalf of and as agent for TD Bank.

11. Plaintiff is informed and believes that Nordstrom services and collects on the Nordstrom Account on behalf of and as agent for TD Bank.

12. Plaintiff began making payments on the accounts before she became financially unable to keep up with the monthly payments.

13. Target began contacting Plaintiff in or about September of 2019 regarding the Target Account.

14. Nordstrom began contacting Plaintiff in or about October of 2019 regarding the Nordstrom Account.

15. Plaintiff retained counsel to assist in dealing with the debt and to seek some type of financial relief.

16. Counsel for Plaintiff sent a letter of revocation to TD Bank regarding the Target Account and Nordstrom Account on or about September 21, 2019.

17. Plaintiff believes her revocation and representation letter was received by TD Bank on September 29, 2019.

18. Plaintiff informed TD Bank, through her letter of revocation, that she was revoking her consent, if it was previously given, to be called on her telephone by automatic dialing machines.

19. Plaintiff was frustrated that Target and Nordstrom continued to make unsolicited calls to her cellular telephone after contacting TD Bank to revoke her consent.

20. Target, as agent for TD Bank, by itself or through its agents or subcontractors, continued to contact Plaintiff between approximately September 23, 2019 – March 18, 2020; the type of contact was through phone calls to Plaintiff on her cellular telephone.

21. Nordstrom, as agent for TD Bank, continued to contact Plaintiff between approximately October 21, 2019 – March 3, 2020; the type of contact was through phone calls to Plaintiff on her cellular telephone.

22. Despite notice being sent, Nordstrom and Target, both as agents for TD Bank, continued to contact Plaintiff on her cellular telephone.

23. TD Bank ignored Plaintiff's letter of representation, did not forward the letter to its agents Target and Nordstrom, but instead continued to allow Target and Nordstrom to contact Plaintiff for at least four (4) months following receipt of Plaintiff's letter.

24. Despite being aware of Plaintiff's September 21, 2019 revocation, TD Bank allowed its agents to continue to contact Plaintiff on her cellular telephone.

25. Target's calls were frequent in nature and continued after written confirmation that Plaintiff was revoking any consent that may have been previously given to be called on her cellular telephone.

26. Nordstrom's calls were frequent in nature and continued after written confirmation that Plaintiff was revoking any consent that may have been previously given to be called on her cellular telephone.

**FIRST CAUSE OF ACTION**
(Violation of the TCPA)
(47 USC § 227)
(Against Defendants and Does 1-100)

27. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A. Target**

28. Since at least September of 2019, Target, as agent for TD Bank, by itself or through its agents or subcontractors, started calling Plaintiff's cellular telephone to request payment on the Target Account.

29. Target, as agent for TD Bank, by itself or through its agents or subcontractors, continued to call Plaintiff frequently after Plaintiff withdrew her consent to be contacted by an automatic dialing machine.

30. Target contacted Plaintiff on at least ninety (90) separate occasions—all within a thirty (30) day span, and Target's agent or subcontractor contacted Plaintiff on at least one-hundred forty-six (146) separate occasions; each call being made after Plaintiff informed TD Bank that she did not wish to be contacted on her cellular telephone and withdrew any prior consent that may have been given.

31. Plaintiff alleges all calls made by Target, or its agents or subcontractors, to her cellular telephone were made with equipment or device(s) which has the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator, and to dial such numbers.

32. Plaintiff alleges there was no conduct by her which triggered an instant "cause and effect" action whereby the number tied to her Target Account was produced and dialed.

33. Plaintiff alleges that her number was placed or stored on a call list or in a database in a random or sequential manner with other numbers to be dialed.

34. Plaintiff alleges that her number was produced from the call list by software that uses a random or sequential method to "pull up" numbers to be called.

35. Plaintiff alleges that from the randomly or sequentially generated call list, her number was called using telephone equipment that caused her cell phone to be dialed.

36. Plaintiff alleges that all calls placed by Target, or its agents or subcontractors, to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1),

which had the capacity to use a random or sequential number generator to either store or produce numbers to be called, and called such numbers.

37. In the alternative, Plaintiff alleges that all calls placed by Target, or its agents or subcontractors, to Plaintiff utilized separate software, programs, or applications, all integrated and running in conjunction to create an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), and together had the capacity to use a random or sequential number generator to either store or produce numbers to be called, and called such numbers.

38. Plaintiff alleges that on at least one of the calls Target, or its agents or subcontractors, made to her, she picked up and heard a "click" and pause before a representative or agent of Target, or its agents or subcontractors, began speaking.

39. All calls placed by Target, or its agents or subcontractors, to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. §227(a)(1).

40. These calls by Target, or its agents or subcontractors, were made to Plaintiff's cellular telephone and were not calls for an emergency purpose as defined by 47 U.S.C. §227(b)(1)(A).

41. These telephone calls by Target, or its agents or subcontractors, violated 47 U.S.C. §227(b)(1)(A)(iii).

**B. Nordstrom**

42. Since at least October of 2019, Nordstrom, as agent for TD Bank, started calling Plaintiff's cellular telephone to request payment on the Nordstrom Account.

43. Nordstrom, as agent for TD Bank, continued to call Plaintiff frequently after Plaintiff withdrew her consent to be contacted by an automatic dialing machine.

44. Nordstrom contacted Plaintiff on at least two-hundred three (203) separate occasions; each call being made after Plaintiff informed TD Bank that she did not wish to be contacted on her cellular telephone and withdrew any prior consent that may have been given.

45. Nordstrom placed the above cited calls using an artificial or prerecorded voice to deliver the messages after Plaintiff revoked consent.

46. Plaintiff alleges all calls made by Nordstrom to her cellular telephone were made with equipment or device(s) which has the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator, and to dial such numbers.

47. Plaintiff alleges there was no conduct by her which triggered an instant "cause and effect" action whereby the number tied to her Nordstrom Account was produced and dialed.

48. Plaintiff alleges that her number was placed or stored on a call list or in a database in a random or sequential manner with other numbers to be dialed.

49. Plaintiff alleges that her number was produced from the call list by software that uses a random or sequential method to "pull up" numbers to be called.

50. Plaintiff alleges that from the randomly or sequentially generated call list, her number was called using telephone equipment that caused her cell phone to be dialed.

51. Plaintiff alleges that all calls placed by Nordstrom to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), which had the capacity to use a random or sequential number generator to either store or produce numbers to be called, and called such numbers.

52. In the alternative, Plaintiff alleges that all calls placed by Nordstrom to Plaintiff utilized separate software, programs, or applications, all integrated and running in conjunction to create an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), and together had the capacity to use a random or sequential number generator to either store or produce numbers to be called, and called such numbers.

53. Plaintiff alleges that on at least one of the calls Nordstrom made to her, she picked up and heard a "click" and pause before a representative or agent of Nordstrom began speaking.

54. All calls placed by Nordstrom to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. §227(a)(1).

55. These calls by Nordstrom were made to Plaintiff's cellular telephone and were not calls for an emergency purpose as defined by 47 U.S.C. §227(b)(1)(A).

56. These telephone calls by Nordstrom, or its agent(s), violated 47 U.S.C. §227(b)(1)(A)(iii).

**SECOND CAUSE OF ACTION**
(Unlawful Collection Practices)
(ORS § 646.639)
(Against TD Bank and Does 1-100)

57. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

58. Plaintiff, as "a natural person who purchases or acquires property, services or

credit for personal, family or household purposes", is a "Consumer". OR. REV. STAT. § 646.639(1)(b).

59. Plaintiff is a "Debtor" because Plaintiff is "a consumer who owes or allegedly owes a debt". OR. REV. STAT. § 646.639(1)(i).

60. Plaintiff's transactions with TD Bank and Target in 2015, and with TD Bank and Nordstrom in 2017, each constitute a "Consumer transaction" as Plaintiff is a Consumer and TD Bank, Target, and Nordstrom were each providing "services or credit to consumers." OR. REV. STAT. § 646.639(1)(c).

61. TD Bank is a "Creditor" as TD Bank, in the ordinary course of business, "engages in consumer transactions", by extending credit, "that result in a consumer owing a debt" to the Defendants. OR. REV. STAT. § 646.639(1)(e).

62. Target and Nordstrom are each a "Debt collector" as Defendants each attempted to "collect a debt owed, or alleged to be owed, to a creditor or a debt buyer." OR. REV. STAT. § 646.639(1)(h).

63. TD Bank cannot assert a defense under OR. REV. STAT. § 646.643 as to the applicability of OR. REV. STAT. § 646.639 since TD Bank is not subject to the requirements of the Fair Debt Collection Practices Act as it is the original creditor of the debt in question. See 15 U.S.C. 1692a(6)(F). Alternatively, if TD Bank are deemed subject to 15 U.S.C. 1692 et seq., TD Bank is not in compliance with the same as the allegations cited above are in violation of both 15 U.S.C. 1692c(c) and 1692d(5).

64. Target contacted Plaintiff on at least ninety (90) separate occasions, and Target's agent or subcontractor contacted Plaintiff on at least one-hundred forty-six (146) separate occasions; frequently calling Plaintiff four (4) times a day in roughly two (2) hour intervals.

65. Plaintiff, having revoked consent and obtained counsel, was harassed and annoyed by the repeated calls placed by Target and Target's agent or subcontractor.

66. Plaintiff, having revoked consent and informed TD Bank to contact her counsel as opposed to her, does not believe Target's, or its agent's or subcontractor's, calls were made with intent to establish contact (which it could have done via her attorney). To the contrary, on the calls Plaintiff did answer, the person speaking was trying to collect on the debt.

67. Each of the above cited calls by Target and Target's agent or subcontractor were made on behalf of and as agent for TD Bank, and each were made as an attempt to collect a debt.

68. Target's frequent calls to Plaintiff constitutes communication with a debtor "repeatedly or continuously" and "with the intent to harass or annoy the debtor" in direct violation of OR. REV. STAT. § 646.639(2)(e).

69. Nordstrom contacted Plaintiff on at least two-hundred three (203) separate occasions; frequently calling Plaintiff up to four (4) times a day, with several calls being placed only sixty (60) seconds apart from one another.

70. Plaintiff, having revoked consent and obtained counsel, was harassed and annoyed by the repeated and continuous calls placed by Nordstrom.

71. Plaintiff, having revoked consent and informed TD Bank to contact her counsel as opposed to her, does not believe Nordstrom's calls were made with intent to establish contact (which it could have done via her attorney). To the contrary, on the calls Plaintiff did answer, the person speaking was trying to collect on the debt.

72. Each of the above cited calls by Nordstrom were made on behalf of and as agent for TD Bank, and each were made as an attempt to collect a debt.

73. Nordstrom's frequent calls to Plaintiff constitutes communication with a debtor "repeatedly or continuously" and "with the intent to harass or annoy the debtor" in direct violation of OR. REV. STAT. § 646.639(2)(e).

74. Target's repeated calls to Plaintiff on behalf of and as agent for TD Bank, which were all made after Plaintiff sent her September 21, 2019 revocation, show TD Bank's actions were willful.

75. Nordstrom's repeated calls to Plaintiff on behalf of and as agent for TD Bank, which were all made after Plaintiff sent her September 21, 2019 revocation, show TD Bank's actions were willful.

76. TD Bank's willful collection attempts were made in violation of OR. REV. STAT. § 646.639(e), Plaintiff seeks to recover all of her attorneys' fees in connection with the preparation and trial of this cause under the authority of OR. REV. STAT. § 646.641(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. An award of statutory damages of $1,500.00 pursuant to 47 U.S.C. §227(b)(3)(B) & (C) for each and every violation;

b. An award of statutory damages of $200.00, pursuant to OR. REV. STAT. §

      646.641(1);

**c.**      Pursuant to 47 U.S.C. §227(b)(3)(A) and OR. REV. STAT. § 646.641(1), injunctive relief prohibiting such conduct in the future;

**d.**      Pursuant to 15 U.S.C. 1692(k) both actual damages and statutory damages in an amount to be proven at trial; and

**e.**      Pursuant to OR. REV. STAT. § 646.641(1) both actual damages and punitive damages in an amount to be proven at trial.

      Respectfully submitted,

      **SCHUMACHER LANE PLLC**

Dated: May 28, 2021

      */s/ Kyle Schumacher*
      Kyle Schumacher
      Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

SCHUMACHER LANE PLLC

Dated: May 28, 2021

*/s/ Kyle Schumacher*
Kyle Schumacher
Attorneys for Plaintiff