```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3                         PORTLAND DIVISION

 4
    MELINDA MICHELLE DOUGLAS,       )
 5                                  )
                         Plaintiff, )  Case No. 3:20-cv-00395-JR
 6                                  )
                   v.               )
 7                                  )  November 16, 2020
    TD BANK USA, National           )
 8  Association; TARGET             )
    ENTERPRISE, INC.; NORDSTROM,    )
 9  INC.; and DOES 1 through 100    )
    inclusive,                      )
10                                  )
                         Defendants.)
11  _____)

12

13

14

15              TELEPHONIC ORAL ARGUMENT

16              TRANSCRIPT OF PROCEEDINGS

17         BEFORE THE HONORABLE MICHAEL H. SIMON

18           UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25
```

```
 1                TELEPHONIC or VIDEO APPEARANCES
 2   FOR THE PLAINTIFF:
                        KYLE W. SCHUMACHER
 3                      Attorney at Law
                        PO Box 558
 4                      Spring Branch, TX 78070

 5   FOR THE DEFENDANT:
                        BRIAN MELENDEZ
 6                      Barnes & Thornburg LLP
                        225 South Sixth Street
 7                      Suite 2800
                        Minneapolis, MN 55402
 8
     FOR THE DEFENDANT:
 9                      NICHOLAS L. DAZER
                        Nicholas L. Dazer PC
10                      121 SW Morrison Street
                        Suite 475
11                      Portland, OR 97204

12

13

14

15

16

17

18

19

20   COURT REPORTER:    Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
                        United States District Courthouse
21                      1000 SW Third Avenue, Room 301
                        Portland, OR 97204
22                      (503)326-8191

23                            *   *   *

24

25
```

```
 1                     TRANSCRIPT OF PROCEEDINGS
 2                        (November 16, 2020)
 3   (Telephonic hearing:)
 4             THE COURTROOM DEPUTY:  Good morning, Counsel.  This
 5   is Mary with Judge Simon.  Before we get started, I want to
 6   make sure we have our court reporter on the line.
 7             THE COURT REPORTER:  I'm here, Mary.
 8             THE COURTROOM DEPUTY:  Who do we have on the line for
 9   plaintiff?
10             MR. SCHUMACHER:  Kyle Schumacher.
11             THE COURTROOM DEPUTY:  Thank you.
12        And for defendants?
13             MR. MELENDEZ:  Brian Melendez.
14             MR. DAZER:  And Nick Dazer, local counsel.
15             THE COURTROOM DEPUTY:  Your Honor, this is the time
16   set for oral argument in case 3:20-cv-00395-JR.  Douglas v. TD
17   Bank USA, National Association, et al.
18        Counsel, there is a court reporter present; so please be
19   sure to state your name before you speak.  Here is Judge Simon.
20             THE COURT:  Good morning, everyone.  Thank you for
21   calling in.  As you know, we're here to talk about the motion
22   to dismiss filed by defendants Target and Nordstrom, and we
23   have the recommendations from Magistrate Judge Russo and the
24   objections to those findings and recommendations.
25        Hopefully, you all will have seen a tentative order and
```

1  opinion that I distributed by email on Friday, and so you are
2  certainly welcome, as I said in the email, to tell me whether
3  you think I have misunderstood any key aspects of the facts or
4  the law, whether I left any important facts or law out or
5  otherwise made any mistakes in my analysis.  By all means,
6  that's what I look forward to.
7      So since this is defendants' motion and, I think, because
8  also the magistrate judge recommended denial of the motion, why
9  don't we begin with argument by defense counsel.  The way I do
10 it is I'll let defense counsel, or whoever argues first, say
11 whatever they wish, then we'll turn to the respondent, and then
12 we'll go back for rebuttal to the movant, and I'll let you go
13 back and forth as long as you are not really repeating what you
14 have already said.  And just one at a time, though, please.
15     Who will be arguing for defendant?
16     MR. MELENDEZ:  Your Honor, Brian Melendez, and I'll
17 be speaking for the moving defendants.
18     THE COURT:  Very good.  Thank you, Mr. Melendez.  Go
19 ahead.
20     MR. MELENDEZ:  Well, Your Honor, you asked if we
21 think you made any mistakes in the fact or the law.  So I have
22 had a chance to read through the tentative order.  Obviously,
23 the defendants take a somewhat different point of view about
24 some issues, but I think you understood everything that we
25 said.

1    The only thing that I might point out is it appears, from
2    reading the tentative order, somebody reading the tentative
3    order might think that TD and Target and Nordstrom are all
4    making calls, which is not actually the case. The only calls
5    being made are calls being made by Target on behalf of TD and
6    by Nordstrom on behalf of TD, but TD itself doesn't make any
7    calls. They are just calls made on its behalf.
8    But that was the only point that I saw that I think an
9    unacquainted reader might get confused by.
10            THE COURT: All right. Let me ask you this follow-up
11    question or two, Mr. Melendez. All right. What happens if a
12    credit card debt goes unpaid? In other words, who bears the
13    risk of lack of payment by a debtor? In this case, let's say
14    Ms. Douglas. Would it be TD Bank or would it be Target?
15            MR. MELENDEZ: It would be TD Bank, Your Honor. So
16    TD is the issuer of the credit card, and so it bears all the
17    financial risk. Target and Nordstrom are each the servicer of
18    a particular line of credit cards that are issued by TD, but
19    they have an arrangement with TD where they get paid to provide
20    various services. They are not -- they don't -- they are not
21    the creditor.
22            THE COURT: Let me ask. If I apply for, with TD
23    Bank, a Target credit card, can I use my Target credit card at
24    any business other than Target?
25            MR. MELENDEZ: You can, Your Honor. That has not

1  always been the case, but the -- the credit cards are -- the
2  Target cards are now all Mastercards.  I'm not sure what
3  Nordstroms are, but they are a general purpose credit card.
4  They're not store-only credit cards.
5          THE COURT:  Okay.  So I get -- take it -- and I'll
6  confine my questions to Target, but I assume that similar
7  things will apply to Nordstrom.  Let me know if I'm wrong in
8  that assumption anywhere.  So what does Target get by -- from
9  TD Bank, and what does it provide?
10         MR. MELENDEZ:  So let me start with what Target
11 provides.  So Target is the servicer of the credit card.  It
12 does basically everything that -- you know, if you have a
13 credit card and you deal with anybody about anything, you are
14 almost always dealing with Target.  So Target --
15         THE COURT:  Hold on.  Will you speak a lot more
16 slowly?  Maybe it's the telephone, but our court reporter will
17 appreciate it, probably; so will I.  Speak much more slowly.
18         MR. MELENDEZ:  I will do my best, Your Honor, and
19 thank you for pointing that out.
20     So, Your Honor, if you have a Target credit card and you
21 are a cardholder, you have almost no interaction with TD.
22 Pretty much anything you do with that credit card you're going
23 to be doing with Target.  So if you call the customer service
24 number because you have got a question or, you know, a
25 complaint or a dispute, you are talking with Target.  Target

1  maintains the records of the accounts, sends out the bills,
2  deals with customer service inquiries, deals with billing error
3  disputes, does the credit reporting.  So Target will send the
4  monthly update to the credit bureau, saying, you know,
5  Ms. Douglas did or didn't pay her account this month.  All of
6  that is done by Target; none of it is done by TD.
7       As for what Target gets, it gets two things.  Number one,
8  Target and TD have a particular services agreement where Target
9  gets compensated for the services that it performs.  The other
10 thing that Target gets -- so this is -- the Target card is a
11 Target store-branded credit card.  And while you can shop with
12 it elsewhere, you get particular discounts when you are
13 shopping at Target.  And so the second thing that Target gets
14 is -- it is driving business to its own stores by -- by the
15 credit card that TD issues.
16           THE COURT:  Sure.
17           MR. MELENDEZ:  And I should point out -- I'm sorry,
18 Your Honor.
19           THE COURT:  Go ahead. I'm sorry.  I thought you were
20 done.
21           MR. MELENDEZ:  Well, I thought I was, too, but then I
22 thought of something else.
23       So, Your Honor, I should point out that the company that
24 runs Target stores is Target Corporation, and the company that
25 services the credit cards is Target Enterprise, Inc., which is

1  a subsidiary of Target Corporation but not an alter-ego.
2          THE COURT: Thank you. And one more follow-up.
3  Maybe just to repeat what you have already said. So if a
4  debtor gets one of these cards, the Target cards, and doesn't
5  pay, the risk of loss is on TD Bank, not Target? Did I hear
6  that right?
7          MR. MELENDEZ: That's correct, Your Honor.
8          THE COURT: Okay. Got it. Anything else you want to
9  say at this time, Mr. Melendez?
10         MR. MELENDEZ: Not at the moment, Your Honor. Thank
11 you.
12         THE COURT: Thank you.
13    Mr. Schumacher, you're welcome to obviously tell me
14 anything that you think I got wrong in the opinion, but I also
15 just want to remind you that I am allowing you to replead, and
16 if you think, basically, that my analysis is generally sound
17 based on the first amended complaint but you think you can fix
18 some of these issues and state claims in a second amended
19 complaint, we might as well just proceed directly to that.
20     With that said, the floor is yours, Mr. Schumacher.
21         MR. SCHUMACHER: Your Honor, thank you very much.
22 Again, Kyle Schumacher speaking here. I would agree that I
23 thought that you accurately stated what my client's positions
24 were and are, and the only -- and I -- it sounds like, from
25 what your tentative ruling was, is not having pled the joint

1  conduct or joint relationship sufficiently enough because my --
2  the complaint merges the telephone calls, therefore making it
3  all three, whereas if we were more clear that it was Target, on
4  behalf of TD Bank, making X calls and Nordstrom, on behalf of
5  TD Bank, making Y calls, that would have cured the deficiency.
6  　　　I believe there are other areas that you've stated where
7  the deficiency can be cured, and so we -- I would just take
8  that, and we'll make a second amended complaint based off of
9  your ruling here.  I think we would be able to do that and be
10 able to survive based off of more specific pleadings.
11 　　　And the only -- you know, as you might know, plaintiff is
12 not aware of the inner-workings all the time of different
13 creditors, and so we -- it is not always clear that it is only
14 Target and never TD Bank making these telephone calls, but we
15 will try and allege these things so that it is clear and that
16 there is the link between those things.
17 　　　So I will just accept that, and I think it was -- I think
18 you said 28 days.
19 　　　　　　THE COURT:  Is 28 days sufficient?
20 　　　　　　MR. SCHUMACHER:  28 days will be sufficient.
21 　　　　　　THE COURT:  All right.  Let me clarify something that
22 you just said.  The primary concern that I have is making it
23 clear as to what any individual defendant did that creates
24 liability, and that really seems to have a couple of
25 dimensions.  Let's say, for example, Target.  We'll put

1   Nordstrom aside because, I think, frankly, Target and Nordstrom
2   may be the same.  If Target made calls itself that you claim
3   violate either the Telephone Consumer Protection Act or the
4   Oregon Unlawful Debt Collection Practices Act -- and I guess we
5   don't have any motion at all on the FDCPA -- so if you claim
6   that Target made calls that violated the Unlawful Debt
7   Collection Practices Act, okay, fine.  Just allege that and
8   allege how.  If you claim that Target made calls that also
9   creates liability under that statute for TD Bank, you'll need
10  to be clear and explain how Target making the calls creates
11  liability for TD Bank.  Conversely, if you claim that TD Bank
12  made calls that violate the Oregon Unlawful Debt Collection
13  Practices Act, that's fine.  Just explain how.  And if you
14  claim that TD Bank's calls also create liability for Target,
15  you will have to explain how.
16       And then to the extent that you allege that one is an
17  agent of the other or that the other is an agent for the first
18  or both or that they're in some type of joint enterprise, just
19  make it clear what you allege so we know what we're looking for
20  when we get to the next phase, which will probably be a summary
21  judgment stage, and then we'll know what we're looking for if
22  we pass beyond that and get to a jury trial phase.
23       So just all of those things need to be made clearer with
24  respect to the Unlawful Debt Collection Practices Act claim.
25       And then, relatedly, I understand that everybody agrees

1   that the letter -- the attorney letter went only to TD Bank.
2   If you want to allege that TD Bank, then, informed Target or
3   Nordstroms of the contents of that letter, fine, if you can,
4   allege that.  If you allege that TD Bank was the agent of
5   Target and Nordstrom and, therefore, their knowledge is imputed
6   to Target or Nordstroms, fine.  Just allege that.  Or if it
7   just simply is irrelevant or in the alternative who had
8   knowledge of the letter, just make that clearer as well.
9        Does that make sense of what the direction is?
10            MR. SCHUMACHER:  Kyle Schumacher speaking here.  Yes,
11  Your Honor, it does.  I appreciate that.
12            THE COURT:  All right.  Very good.
13       All right.  Anything else, Mr. Melendez, that you wish to
14  add?  Sounds like you won this motion, so I can't imagine
15  there's anything else.
16            MR. MELENDEZ:  The advice -- Your Honor,
17  Brian Melendez.  The advice that I got very early in my career
18  was when a judge tells you what you want, sit down and shut up.
19  So that is what I'll do today, Your Honor.
20            THE COURT:  By the way, many years ago I heard a
21  judge in this district say it but slightly differently.  He
22  said, "Would you like to attempt to wrestle defeat from the
23  jaws of victory?"
24       All right.  Thank you all very much.  We'll get the
25  opinion out this afternoon.

```
 1            MR. MELENDEZ:  Thank you, Your Honor.
 2            MR. SCHUMACHER:  Thank you, Your Honor.
 3            THE COURT:  Bye.
 4            MR. SCHUMACHER:  Bye.
 5            MR. MELENDEZ:  Bye.
 6                     (Hearing concluded.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

Melinda Michelle Douglas v. TD Bank USA, National Association

3:20-cv-00395-JR

Telephonic Oral Argument

November 16, 2020

I certify, by signing below, that the foregoing is a true and correct transcript, to the best of my ability, of the telephonic proceedings heard via conference call, taken by stenographic means.  Due to the telephonic connection, parties appearing via speakerphone or cell phone or wearing masks due to coronavirus, speakers overlapping when speaking, speakers not identifying themselves before they speak, fast speakers, the speaker's failure to enunciate, and/or other technical difficulties that occur during telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the speakerphone at the United States District Court of Oregon in the above-entitled cause.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
_____

Official Court Reporter        Signature Date: 10/6/2021
Oregon CSR No. 98-0346         CSR Expiration Date:  9/30/2023